IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ARIS V. GARCIA,<br><br>                Plaintiff,<br><br>vs.<br><br>BIMBO BAKERIES USA, INC.,<br><br>                Defendant. | **8:20CV232**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the parties' cross motions for summary judgment, Filing Nos. 131 and 138, and on the defendant's motion to strike the plaintiff's brief as untimely, Filing No. 144.[1] This is a *pro se* action for discrimination in employment. Jurisdiction is based on 28 U.S.C. § 1331.

I.    BACKGROUND

The plaintiff, Aris V. Garcia, alleges that his former employer, Bimbo Bakeries USA, Inc. (hereinafter "BBU") discriminated against him based on his race (Asian) in violation of 42 U.S.C. § 1981 and committed civil conversion in violation of Nebraska common law.

The evidence of record shows that BBU hired Plaintiff as a Maintenance Engineer (mechanic) in September 2012. He was expected to perform preventative, predictive, and proactive maintenance on bakery equipment in Bimbo Bakeries' Bellevue facility. Maintenance calls that involved a down production line were to be considered priority

---

[1] "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2). The plaintiff has not shown good cause for his untimely pleading. Nevertheless, in light of the fact that the plaintiff is proceeding *pro se*, the court will deny the defendant's motion to strike and has considered the plaintiff's tardy submissions.

1

calls. Specifically, BBU expected all Maintenance Technicians to document and correlate at least 80% of their work time to addressing and resolving maintenance tickets. BBU had a well-established progressive discipline policy for employees at its Bellevue facility and generally followed that policy. Under the policy, employees were first disciplined with verbal counseling, then a written warning, then a suspension, and, if problems were still not corrected, termination.

The record shows the plaintiff was formally disciplined on November 5, 2014, for improper repairs he performed that resulted in a production line being down and/or product being lost. Filing No. 140-4, Exhibit (Ex.) D; Filing No. 140-1, Ex. A, Deposition of Aris Garcia (Garcia Dep.) at 151–53. On November 10, 2014, Garcia received another formal disciplinary action, again for an improper equipment repair that resulted in a production line being down and/or product being lost. Filing No. 140-5, Ex. E. He received his third formal disciplinary warning on October 26, 2015, for failing to meet BBU's productivity expectations. Filing No. 140-6, Ex. F; Filing No. 140-1, Ex. A, Garcia Dep. at 172–74.

The plaintiff received his fourth formal disciplinary warning on February 9, 2016, for failing to investigate a problem. Filing No. 140-7, Ex. G. The plaintiff received his fifth formal disciplinary warning on March 28, 2016. Filing No. 140-8, Ex. H. The warning involved the plaintiff's failure to install a machine part correctly which led to the production line being down. Id. On July 11, 2016, the plaintiff was suspended for one day after he stepped on part of a food production line to perform repairs when he should have used a ladder. Filing No. 140-9, Exhibit I; Filing No. 140-1, Ex. A, Garcia Dep. at 187–90. The

production line then had to be closed and cleaned due to sanitation and production/food quality standards. *Id.*

In mid-August 2016, Plaintiff improperly installed another piece of equipment "and when production started [the equipment] cut into [other new equipment] that had been installed." Filing No. 140-10, Exhibit J; Filing No. 140-1, Ex. A, Garcia Dep. at 198–202. BBU did not issue Garcia a formal disciplinary warning for this performance failure, instead it coached him and stressed that he needed to improve, or he would be terminated. Filing No. 140-2, Ex. B, Charles Kirby Declaration (Decl.) at 2. Using the August 12, 2016, performance incident as an opportunity for coaching provided Garcia with a "second chance" to correct his unsatisfactory work performance. Filing No. 140-1, Ex. A, Garcia Dep. at 198–203.

Garcia testified at his deposition that none of these disciplinary warnings, including his suspension, were motivated by his race. Filing No. 140-1, Ex. A, Garcia Dep. at 170, 208). He testified that it was possible that he was terminated for unsatisfactory work performance. *Id.* at 253–54. On September 17, 2016, an "all hands on deck" call went out to the maintenance department to respond to a broken machine. Filing No. 140-2, Kirby Decl. at 2. Garcia testified that he initially responded to the priority call, but unilaterally decided to leave. Filing No. 140-1, Garcia Dep. at 226, 232–33. He was then called back and asked to retrieve a necessary part. *Id.* at 228–29, 230, 239. He did not bring the part and another employee had to retrieve it. *Id.* at 239. After an investigation of that incident, and based on Garcia's performance and disciplinary history, BBU terminated Garcia's employment. Filing No. 140-2, Kirby Decl. at 3. Garcia testified that his supervisor, Chuck Kirby, was upset with him because of how he responded to the call.

Filing No. 140-1, Garcia Dep. at 240. Garcia stated that Mr. Kirby yelled at him, but conceded that Kirby yelled at everyone, regardless of race. *Id.* at 236, 244. Moreover, Garcia admits he does not know any BBU employees with the same disciplinary record as he had. *Id.* at 335–36.

Undisputed evidence also shows that maintenance engineers kept their personal tools in a personal large rolling lockable push toolbox that was returned at the end of each shift and was stored in the maintenance shop. *Id.* at 276–77. On September 20, 2017, Mr. Kirby offered to assist Plaintiff with loading his toolbox into his truck so Plaintiff could take his tools with him, but Plaintiff declined. *Id.* at 281–82. Eventually, another BBU employee called Garcia and sent him a letter to arrange the pick-up of Garcia's tools. Filing No. 140-12, Ex. L, Yasmin Melies letter dated February 7, 2017; Filing No. 140-1, Ex. A, Garcia Dep. at 287–88. Garcia made no attempt to pick up his tools between the date of his termination and February or March 2017. Filing No. 140-1, Ex. A, Garcia Dep. at 288–89; Filing No. 140-13, Exhibit M, Plaintiff's Responses to Requests for Admission (RFA), Response No. 2. Garcia alleges that when he retrieved his toolbox, some of his tools were "missing" or replaced with less valuable tools. Filing No. 140-13, Ex. M, RFA, Response No. 1. After he retrieved his tools, Garcia made no attempt to contact BBU regarding his claim of missing or replaced tools. *Id.*, Response No. 2. Garcia testified he does not know who allegedly took or replaced his tools. *Id.*, Response No. 3.

In his motion for summary judgment, Garcia asserts he is entitled to judgment as a matter of law. In support of his motion and in opposition to the defendant's motion, Garcia submits voluminous and largely irrelevant employment records, tax records, financial records, bills, legal treatises, medical records, drug-testing results, NEOC filings,

4

divorce records, and records of legal proceedings that are not connected to this case. Filing Nos. 131-1, 142 and 143-1.

BBU moves for summary judgment contending that the undisputed evidence shows that Garcia cannot establish a prima facie case of race discrimination because he cannot show he was qualified for his job and because there is no evidence that creates an inference of unlawful race discrimination.

II.   LAW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "Evidence, not contentions, avoids summary judgment." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 809 (8th Cir.2003). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).

5

"On a motion for summary judgment, the 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Id.* The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

The filing of cross-motions for summary judgment does not "necessarily indicate that there is not dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Consequently, "where conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment." *Id.*

Claims of discrimination brought under 42 U.S.C. § 1981 are analyzed in the same manner as discrimination claims brought under Title VII. *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005). If a plaintiff has no direct evidence of unlawful race discrimination, his claim is analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), by first establishing a prima facie case. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015). "[T]he prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . .*'" *O'Connor v. Consol.*

6

*Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996) (quoting *Teamsters v. United States*, 431 U.S. 324, 358 (1977)* (emphasis added in *O'Connor*)). "To make out a prima facie case of race discrimination, [a plaintiff] must show that: (1) he "is a member of a protected class," (2) he met Atrium's "legitimate expectations," (3) he "suffered an adverse employment action," and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Carter v. Atrium Hosp.*, 997 F.3d 803, 809 (8th Cir. 2021) (quoting *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020)); *see also see also Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (stating that in order to survive a motion for summary judgment on a discrimination claim, a plaintiff must present direct evidence of discrimination or "create[ ] an inference of unlawful discrimination under the burden-shifting framework . . . "). To create an inference of discrimination by reason of being treated differently than other employees outside the protected class, a plaintiff must proffer "specific, tangible evidence" that the purported comparator employees were "similarly situated in all relevant respects, including that the offenses were of the same or comparable seriousness." See *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 730 (8th Cir. 2019). Unsupported, self-serving allegations that another employee is similarly situated are insufficient. *Id.*

Successfully establishing a prima facie case facie case "'creates a rebuttable presumption of discrimination' and shifts the burden to [the defendant ] to produce 'a legitimate, nondiscriminatory reason for its decision.'" *Carter,* 997 F.3d at 808 (quoting *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011)). If a defendant "provides such a reason, 'the presumption disappears' and the burden returns to [the plaintiff] to present

7

evidence 'that the proffered reason was pretext for discrimination." *Id.* at 808–09 (quoting *Pye*, 641 F.3d at 1019).

Conversion is an "intentional" tort to remedy the "exercise of dominion or control over a chattel" that "seriously interferes with the right of another to control it[.]" *Zion Lutheran Church of Benson Station v. Mehner*, No. A-08-200, 2009 WL 39311, at *5 (Neb. Ct. App. Jan. 6, 2009). In short, conversion is akin to theft. *Schmidt v. Union Ins. Co.*, No. A-91-277, 1993 WL 35694, at *4 (Neb. Ct. App. Feb. 16, 1993). "In order for the cause of action to arise, [BBU] must have assumed and exercised the right of ownership over goods or chattels belonging to [the plaintiff.]" *Barelmann v. Fox*, 239 Neb. 771, 786–87, 478 N.W.2d 548, 558 (1992). "Hence, [a plaintiff] must show (1) an immediate right to possession of the property and (2) its wrongful possession by [BBU]." *Id.*

III.   DISCUSSION

BBU does not contest that Garcia is a member of a protected class (Asian) and suffered an adverse employment action (termination). Whether Garcia was qualified for the position so as to satisfy the third element of his prima facie case need not be addressed since Garcia has not presented any evidence that creates an inference of discrimination. He has shown only that he is a member of a protected class and was terminated. Though the plaintiff vaguely alludes to other employees not being disciplined for violating lock-out policies, the has no evidence that those employees were similarly situated to him. There is no dispute that he was not disciplined or terminated for violating lock-out procedures. Garcia has not shown that other similarly situated employees were treated more favorably than he was treated, nor has he presented any other evidence that would create an inference of discrimination. Accordingly, the Court finds that Garcia has not established a prima facie case of race discrimination in this case.

It is undisputed that BBU followed its progressive discipline policy by suspending and then terminating Garcia only after BBU gave him verbal and written warnings and Garcia's job performance was not corrected. Garcia does not dispute that he had accumulated five formal disciplinary warnings for behavior that involved lost production time and/or lost product. In the eight months preceding his termination, Garcia received: (a) two formal disciplinary warnings; (b) a disciplinary suspension; and (c) formal coaching in lieu of termination.

The defendant has articulated a nondiscriminatory reason for terminating plaintiff, namely, his work performance. BBU has established that plaintiff's employment was terminated because he was disciplined over five times for performance issues that shut down the production line. The burden then shifts to the plaintiff to show that the reasons offered by the employer are merely a pretext for discrimination. Plaintiff offers no evidence in this regard. Even if he had met the elements of his prima facie case, Garcia would be unable to establish pretext on this record. Although Garcia alleges numerous general workplace grievances, there is no evidence that the defendant's alleged adverse actions were motivated by race. The "central question" in a discrimination case is whether Plaintiff "was treated differently on account of his race." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 939 (8th Cir. 2019). Based on the undisputed evidence, no reasonable juror could find in favor of the plaintiff. BBU has established that it is entitled to summary judgment on Garcia's race discrimination claim.

Similarly, the plaintiff has not presented evidence to support his conversion claim. Viewed in the light most favorable to Garcia, the undisputed facts do not amount to a claim for conversion under Nebraska law. In any event, the court has the discretion to

9

decline to exercise supplemental jurisdiction over a when federal claims are dismissed on a motion for summary judgment and the Court would do so in this instance. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims")

IT IS ORDERED

1. The defendant's motion to strike (Filing No. 144) is denied.

2. The plaintiff's motion for summary judgment (Filing No. 131) is denied.

3. The defendant's motion for summary judgment (Filing No. 138) is granted.

4. A judgment of dismissal will be entered.

Dated this 6th day of May, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge